Peter B. Janci, OSB No. 074249
peter@crewjanci.com
Kendall M. H. Spinella, OSB No. 214446
kendall@crewjanci.com
Crew Janci LLP
9755 SW Barnes Road, Suite 430
Portland, Oregon 97225
Telephone: (503) 306-0224

Paul Galm, OSB No. 002600
paul@paulgalmlaw.com
Galm Law
50 SW Pine St., #403
Portland, OR 97204
Telephone: (503) 647-6000

*Of Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| M.P., T.B., N.N., A.B., J.S., B.N., M.L., J.L., C.F., and J.K., proceeding under pseudonyms, | Case No.  3:25-CV-00940-SB |
| | SECOND AMENDED COMPLAINT |
| Plaintiffs, | |
| | Civil Rights Violations of 8th and 14th Amendments – 42 U.S.C. § 1983; Negligence; Sexual Battery – *Respondeat Superior* |
| v. | |
| STATE OF OREGON, by and through the Oregon Youth Authority; KAREN BRAZEAU; ROBERT JESTER; DIRECTORS #3-5; GARY LAWHEAD; MIKE CONZONER; DARIN HUMPHREYS; SUPERINTENDENTS #4-8; and UNKNOWN STAFFERS #1-15, | JURY TRIAL DEMANDED |
| | Not Subject to Mandatory Arbitration |
| | Filing Fee: ORS 21.160(1)(e) |
| Defendants. | Amount Prayed For: $51,000,000.00 |

**NATURE OF ACTION**

1.

At all times material, Plaintiffs were male juveniles adjudicated in various counties across Oregon (including, on information and belief, in Multnomah County) and ultimately committed to the care and custody of the Oregon Youth Authority (the "OYA"). The OYA's stated purpose is in part to "provide youth with treatment, education, and other guidance to help them take responsibility for their behavior" and "do so in safe, supportive environments that will help them become responsible, community-minded citizens."[1] The OYA placed each of the Plaintiffs at the MacLaren Youth Correctional Facility in Woodburn, Oregon ("MacLaren") at some point during their confinement. While housed at MacLaren, all ten Plaintiffs were sexually abused by Doctor Edward Gary Edwards ("Dr. Edwards"), a long-time pediatrician providing medical care to youths at MacLaren since 1977. The sexual abuse of Plaintiffs occurred between approximately 2001 and 2007 and included, *inter alia*, skin-on-skin fondling and groping of Plaintiffs' testicles and penises, digital penetration, and masturbation—all for Dr. Edwards' sexual gratification. Dr. Edwards' sexual abuse of children at MacLaren was so prevalent and well known among the MacLaren administration, staff, and youths that they nicknamed him "Dr. Cold Fingers." Rather than report Dr. Edwards or take other action to prevent his abuse of youth in their custody, MacLaren correction officers instead ignored and, in some cases, weaponized Dr. Edwards' well-known pedophilia, threatening kids that if they did not behave, they would be sent to "Dr. Cold Fingers" as punishment.

**PARTIES**

2.

Plaintiffs were at all relevant times residents of the State of Oregon and in the custody of

---

[1] *About Oregon Youth Authority*, https://www.oregon.gov/oya/aboutoya/pages/default.aspx (last visited Feb. 13, 2025)

the OYA as adjudicated youths. Furthermore, all Plaintiffs are proceeding under pseudonyms because of the sensitive and embarrassing nature of the allegations contained herein. Moreover, revealing their identities as survivors of childhood sexual abuse would subject Plaintiffs and their families to humiliation, embarrassment, and emotional distress. Plaintiffs will be filing a motion to proceed under pseudonyms concurrently with this complaint, and their identities will be promptly provided to counsel for Defendants, subject to reasonable assurances of confidentiality.

3.

Plaintiff M.P. is a 36-year-old male resident of the State of Oregon. At all times relevant to the wrongful conduct complained of herein, Plaintiff M.P. was in the legal and physical custody of OYA.

4.

Plaintiff T.B. is a 39-year-old male resident of the State of Oregon. At all times relevant to the wrongful conduct complained of herein, Plaintiff T.B. was in the legal and physical custody of OYA.

5.

Plaintiff N.N. is a 38-year-old male resident of the State of Oregon. At all times relevant to the wrongful conduct complained of herein, Plaintiff N.N. was in the legal and physical custody of OYA.

6.

Plaintiff A.B. is a 36-year-old male resident of the State of Oregon. At all times relevant to the wrongful conduct complained of herein, Plaintiff A.B. was in the legal and physical custody of OYA.

7.

Plaintiff J.S. is a 36-year-old male resident of the State of Oregon. At all times relevant to the wrongful conduct complained of herein, Plaintiff J.S. was in the legal and physical custody of OYA.

PAGE 3 – **SECOND AMENDED COMPLAINT**

8.

Plaintiff B.N. is a 39-year-old male resident of the State of Oregon. At all times relevant to the wrongful conduct complained of herein, Plaintiff B.N. was in the legal and physical custody of OYA.

9.

Plaintiff M.L. is a 37-year-old male resident of the State of Oregon. At all times relevant to the wrongful conduct complained of herein, Plaintiff M.L. was in the legal and physical custody of OYA.

10.

Plaintiff J.L. is a 36-year-old male resident of the State of Oregon. At all times relevant to the wrongful conduct complained of herein, Plaintiff J.L. was in the legal and physical custody of OYA.

11.

Plaintiff C.F. is a 35-year-old male resident of the State of Oregon. At all times relevant to the wrongful conduct complained of herein, Plaintiff C.F. was in the legal and physical custody of OYA.

12.

Plaintiff J.K. is a 35-year-old male resident of the State of Oregon. At all times relevant to the wrongful conduct complained of herein, Plaintiff J.K. was in the legal and physical custody of OYA.

13.

The OYA is a duly authorized agency of Defendant State of Oregon. OYA operates facilities across Oregon where youth offenders are housed and treated, including MacLaren. Under the Oregon Tort Claims Act, OYA is subject to liability for the torts of its officers, employees, and agents acting within the scope of their employment or duties.

PAGE 4 – **SECOND AMENDED COMPLAINT**

14.

At all times material, Dr. Edwards was acting under the color of state law. All conduct alleged below occurred within the scope of his employment with the OYA or resulted from acts within the scope of that employment.

15.

Defendant KAREN BRAZEAU was the Director of OYA from 2001 through 2004. As the Director of OYA, she was employed by OYA, a state administrative agency, and acting under the color of state law. All conduct alleged below occurred within the scope of the Director's employment with the OYA. Defendant Brazeau is sued in her individual capacity.

16.

Defendant ROBERT JESTER was the Director of OYA from 2004 through 2008. As the Director of OYA, he was employed by OYA, a state administrative agency, and acting under the color of state law. All conduct alleged below occurred within the scope of the Director's employment with the OYA. Defendant Jester is sued in his individual capacity

17.

Based on information and belief, DIRECTORS #3-5 are current or former employees of the State of Oregon whose identities are currently unknown to Plaintiffs. At all relevant times, DIRECTORS #3-5 were employed as directors of the OYA and acting under the color of state law. All conduct alleged below occurred within the scope of DIRECTORS #3-5's employment with the OYA. DIRECTORS #3-5 are sued in their individual capacity.

18.

All the individual Defendant directors listed above, both named and unnamed, will be collectively referred to as "Directors."

19.

Defendant GARY LAWHEAD was the Superintendent of MacLaren from 2002 through 2005. As the Superintendent of MacLaren, he was employed by OYA, a state administrative agency, and was acting under the color of state law. All conduct alleged below occurred within the scope of the Superintendent's employment with the OYA. Defendant Lawhead is sued in his individual capacity.

20.

Defendant MIKE CONZONER was the Superintendent of MacLaren from 2005 through 2006. As the Superintendent of MacLaren, he was employed by OYA, a state administrative agency, and was acting under the color of state law. All conduct alleged below occurred within the scope of the Superintendent's employment with the OYA. Defendant Conzoner is sued in his individual capacity.

21.

Defendant DARIN HUMPHREYS was the Superintendent of MacLaren from 2006 through 2008. As the Superintendent of MacLaren, he was employed by OYA, a state administrative agency, and was acting under the color of state law. All conduct alleged below occurred within the scope of the Superintendent's employment with the OYA. Defendant Humphreys is sued in his individual capacity.

22.

Based on information and belief, SUPERINTENDENTS #4-8 are current or former employees of the State of Oregon whose identities are currently unknown to Plaintiffs. At all relevant times, SUPERINTENDENTS #4-8 were employed as superintendents of the MacLaren and acting under the color of state law. All conduct alleged below occurred within the scope of

PAGE 6 – **SECOND AMENDED COMPLAINT**

SUPERINTENDENTS #5-8's employment with the OYA. SUPERINTENDENTS #4-8 are sued in their individual capacity.

23.

All the individual Defendant superintendents listed above, both named and unnamed, will be collectively referred to as "Superintendents."

24.

Based on information and belief, UNKNOWN STAFFERS #1-15 are unknown individuals employed by OYA who were aware of reports and indications that Dr. Edwards posed a danger of sexual abuse to youth in OYA custody.

25.

Directors, Superintendents, and UNKNOWN STAFFERS #1 – 15 are hereinafter referred to collectively as "Individual Defendants."

26.

Dr. Edwards, as discussed below, engaged in intentional conduct resulting in one or more of the following: mental injury, rape, sexual assault, and/or sexual exploitation of Plaintiffs as those terms are defined in ORS 12.117.

**OYA'S CULTURE OF SILENCE AROUND SEXUAL ABUSE**

27.

Youth are committed to OYA's legal and physical custody by county juvenile courts. OYA serves adjudicated youth between the ages of 12 and 25. OYA's youth correctional facilities include Eastern Oregon Youth Correctional Facility, MacLaren Youth Correctional Facility, Oak Creek Youth Correctional Facility, Rogue Valley Youth Correctional Facility, Tillamook Youth Correctional Facility, Northern Oregon Regional Correctional Facilities

PAGE 7 – **SECOND AMENDED COMPLAINT**

(NORCOR), and formerly Hillcrest Youth Correctional Facility, which is now closed

(hereinafter collectively "youth correctional facilities").

28.

In addition to youth correctional facilities, OYA also operates transition programs. These

transition facilities include Camp Florence Youth Transitional Facility, Riverbend, Camp

Tillamook Youth Transitional Facility, and Jackie Winters Youth Transition Program.

29.

"With a goal of being a national leader," OYA boasts that it quickly began implementing

the standards set out by the federal 2003 Prison Rape Elimination Act ("PREA").[2] The PREA

created federal standards for preventing, detecting, monitoring, and responding to sexual abuse

in both adult and juvenile custody settings. On information and belief, the passage of the PREA

in 2003 followed an extended period of more localized awareness (including within OYA) of a

sustained and systemic problem of sexual abuse of adjudicated youth in youth correctional

facilities.

30.

Since 2005, OYA claims that it is committed to "a zero-tolerance policy towards sexual

and other threats of harm" as part of its implementation of the PREA.[3] To that end, OYA created

a Professional Standards Office ("PSO") to supposedly document, track, and investigate

allegations of abuse. Staff were also required to report any knowledge, suspicion, or youth

reports (verbal or written) of abuse or harassment. This included establishing (a) an OYA toll-

free hotline that adjudicated youth could call to report sexual abuse and (b) a PREA compliance

manager for each facility. Prior to establishment of the PSO, there was little to no OYA process

_____

[2] Oregon Youth Authority Issue Brief: Protecting Youth Offenders from Sexual Victimization
(February 2011).
[3] Id

PAGE 8 – **SECOND AMENDED COMPLAINT**

or policy concerning the monitoring, reporting, investigation, and tracking of sexual abuse committed by OYA personnel against juveniles in OYA's custody and control.

31.

Despite this alleged implementation, OYA has a long history of ignoring reports of staff sexually abusing youth in its facilities and fostering an environment where unchecked sexual abuse could thrive. This environment stems from OYA failing to timely investigate the large backlog of reports of abuse within its facilities, failing to properly train staff, failing to report known incidents of sexual abuse to external investigative agencies, and failing to implement policies that would protect youth from sexual abuse by staff.

32.

Recently, OYA's systemic failures have been exposed through a series of lawsuits alleging unchecked sexual abuse by OYA staff and media coverage of OYA's lengthy backlog of complaints of sexual abuse that have gone uninvestigated and unaddressed.

**DOCTOR "COLD FINGERS" EDWARDS**

33.

At all relevant times, Dr. Edwards was employed or otherwise working on behalf of OYA as a pediatrician providing medical examination, diagnoses, and treatment to youths at MacLaren since 1977. Dr. Edwards was later named chief medical officer at MacLaren. In or around 2003, a claim for harassment was filed against Dr. Edwards, including allegations of Dr. Edwards "lunging" at a nurse. Per the OYA superintendent at the time, "the fallout from the incident… has been considerable." Dr. Edwards remained a physician at MacLaren despite the complaint.

34.

Dr. Edwards was the primary medical provider at MacLaren from at least the late 1990s through at least 2017. Upon information and belief, Dr. Edwards was the only doctor working on site full-time at MacLaren during this time and, as such, was in charge of medical care for all adjudicated youth at MacLaren, including performing intake examinations, periodic physicals,

PAGE 9 – **SECOND AMENDED COMPLAINT**

and similar examinations. Towards the end of his tenure with OYA, Dr. Edwards also periodically worked at Hillcrest. In this role, Dr. Edwards had unfettered and unmonitored access to his victims.

35.

Dr. Edwards was dubbed "Dr. Cold Fingers" by adjudicated youth and staff alike because he was infamous for groping boys' genitals and penises with cold, ungloved hands during exams for no legitimate medical reason; digital penetration of boys' anuses; stroking boys' penises until erect; and masturbating boys, including in some instances to ejaculation. Dr. Edwards sexually abused children during intake exams, follow-up physicals, and unrelated medical visits in his exam room when no nurse or chaperone was present.

36.

Dr. Edwards' abuse of boys was common knowledge amongst both the adjudicated youth and OYA staff. Older adjudicated youth warned newly-arrived boys about Dr. Edwards. MacLaren staff made jokes about Dr. Edwards abusing adjudicated youth. Corrections officers threatened to send juveniles to Dr. Edwards as punishment if they misbehaved.

37.

Multiple adjudicated youths reported Dr. Edwards to staff and counselors at MacLaren, but nothing was done.

38.

OYA empowered Dr. Edwards and the Defendant Staffers to perform the duties of a doctor, staffer, or corrections officer, including the authority to discipline juveniles, implement physical supervision, and ensure rule enforcement. OYA knew that Dr. Edwards and these Defendant Staffers were each in a position of authority, power, and trust over adjudicated youth, including Plaintiffs. OYA retained the right to control the means and methods used by Dr. Edwards and the Defendant Staffers in its employ. It was during the course of exercising these

duties and authority on behalf of OYA that Dr. Edwards and the Defendant Staffers abused

Plaintiffs.

39.

In addition, or in the alternative, OYA caused Plaintiffs to believe that OYA consented to

Dr. Edwards and the Defendant Staffers acting on OYA's behalf. Plaintiffs reasonably relied

upon this belief. Dr. Edwards and the Defendant Staffers' employment and service on behalf of

OYA made them agents and/or apparent agents of OYA.

**ABUSE OF M.P.**

40.

Plaintiffs reallege and incorporate herein paragraphs 1 through 39.

41.

Plaintiff M.P. is a 36-year-old male. M.P. was adjudicated and initially placed in

MacLaren in or around 2003. M.P. was abused by Dr. Edwards two times, starting at or around

the age of 13.

42.

M.P. was sent to Dr. Edwards at least two times while at MacLaren. The first time Dr.

Edwards inappropriately fondled his testicles and penis during his intake exam. The second time

M.P. visited him for an injury to his hand. During the visit, Dr. Edwards informed M.P. his hand

was fine, and then digitally penetrated M.P.'s anus with an ungloved finger.

43.

As a direct and proximate result of Dr. Edwards' and Defendant OYA's wrongful

conduct, M.P. incurred and/or will incur medical expenses for counseling and

psychiatric/psychological treatment of approximately $100,000.

44.

Directly because of Dr. Edwards' and Defendant OYA's wrongful conduct, M.P. has

suffered from extreme pain, suffering, and emotional distress. Since being released from

MacLaren, M.P.'s ability to trust others and express intimacy has been impaired, which has

interfered with his ability to develop normal relationships with people. M.P. also struggles with

anger and has participated in both sexual assault and anger management classes. His

psychological injuries persist to the present and are therefore permanent in nature. Consequently,

M.P. has suffered noneconomic damages of $5,000,000, the exact amount to be determined by a

jury.

**ABUSE OF T.B.**

45.

Plaintiffs reallege and incorporate herein paragraphs 1 through 44.

46.

Plaintiff T.B. is a 39-year-old male. T.B. was adjudicated and initially placed in

MacLaren in or around 2001. T.B. was abused by Dr. Edwards at least five times starting at the

age of 16.

47.

On multiple occasions, T.B. was sent to Dr. Edwards with a sore throat. During these

examinations, Dr. Edwards directed T.B. to sit on the table, remove his pants, and expose his

genitals. Dr. Edwards would then fondle his penis and testicles for approximately one minute.

When T.B. asked Dr. Edwards why this was being done, Dr. Edwards said that he was checking

for hernias. Once, after T.B. informed Dr. Edwards that a hernia exam was unnecessary, Dr.

Edwards nonetheless digitally penetrated T.B.'s anus without gloves.

48.

T.B. reported Dr. Edwards' sexual abuse to a MacLaren staff member. The staff member

laughed and said, "That's Dr. Cold Fingers for you."

PAGE 12 – **SECOND AMENDED COMPLAINT**

49.

As a direct and proximate result of Dr. Edwards' and Defendant OYA's wrongful conduct, T.B. incurred and/or will incur medical expenses for counseling and psychiatric/psychological treatment of approximately $100,000.

50.

Directly because of Dr. Edwards' and Defendant OYA's wrongful conduct, T.B. has suffered from extreme pain, suffering, and emotional distress. He has suffered from depression and post-traumatic stress disorder. T.B.'s ability to trust others and express intimacy has been impaired, which has interfered with his ability to develop normal relationships with people. After his release, T.B. self-medicated with methamphetamine in order to cope with his psychological injuries. His psychological injuries persist to the present and are therefore permanent in nature. Consequently, T.B. has suffered noneconomic damages of $5,000,000, the exact amount to be determined by a jury.

**ABUSE OF N.N.**

51.

Plaintiffs reallege and incorporate herein paragraphs 1 through 50.

52.

Plaintiff N.N. is a 38-year-old male. N.N. was adjudicated and later placed in MacLaren in or around 2003-2004. N.N. was abused by Dr. Edwards at least two times when he was 15 or 16.

53.

When N.N. first visited Dr. Edwards, Dr. Edwards' hands were wet from drinking soda. Dr. Edwards immediately removed N.N.'s pants and began groping N.N.'s testicles. Dr. Edwards claimed that he was checking for hernias. When N.N. complained that Dr. Edwards' hands were wet, Dr. Edwards dried them by wiping them against N.N.'s bare buttocks. N.N. later visited Dr.

Edwards to have his Ritalin prescription adjusted. Dr. Edwards once again removed N.N.'s pants and groped N.N.'s penis, testicles, and other adjacent body parts.

54.

After the first exam, N.N. immediately reported Dr. Edwards' inappropriate behavior to a guard stationed outside the exam room. The guard laughed and, referring to Dr. Edwards as Dr. Cold Fingers, said, "Yeah, he does that."

55.

N.N. also reported Dr. Edwards' abuse to a nurse after the second exam. The nurse asked N.N. how he knew that the exam was inappropriate if he was not a doctor.

56.

As a direct and proximate result of Dr. Edwards' and Defendant OYA's wrongful conduct, N.N. incurred and/or will incur medical expenses for counseling and psychiatric/psychological treatment of approximately $100,000.

57.

Directly because of Dr. Edwards' and Defendant OYA's wrongful conduct, N.N. has suffered from extreme pain, suffering, and emotional distress. After he left MacLaren, N.N. started using hard drugs, suffered from crippling anxiety, and refused to go see a doctor. His psychological injuries persist to the present and are therefore permanent in nature. Consequently, N.N. has suffered noneconomic damages of $5,000,000, the exact amount to be determined by a jury.

**ABUSE OF A.B.**

58.

Plaintiffs reallege and incorporate herein paragraphs 1 through 57.

PAGE 14 – **SECOND AMENDED COMPLAINT**

59.

Plaintiff A.B. is a 36-year-old male. A.B. was adjudicated and initially placed in MacLaren in or around 2003. A.B. was abused by Dr. Edwards at least six times, beginning at age 15.

60.

A.B. would visit Dr. Edwards as needed for routine medical purposes. Regardless of the ailment, Dr. Edwards would always order A.B. to remove his pants and expose his genitals. Dr. Edwards then fondled A.B.'s genitals without gloves for up to fifteen seconds at a time. Dr. Edwards would leave one hand on A.B.'s scrotum while grabbing A.B.'s legs with the other. Although A.B. attempted to avoid Dr. Edwards as much as possible, he was forced to visit Dr. Edwards against his will if he ever needed medical assistance.

61.

A.B. regularly discussed the abuse by Dr. Edwards with other juveniles, often in the presence of MacLaren staff. Despite the candid disclosure of Dr. Edwards' abuse by so many juveniles, A.B. never witnessed MacLaren staff react, make inquiries about the abuse, or attempt to stop it.

62.

As a direct and proximate result of Dr. Edwards' and Defendant OYA's wrongful conduct, A.B. incurred and/or will incur medical expenses for counseling and psychiatric/psychological treatment of approximately $100,000.

63.

Directly because of Dr. Edwards' and Defendant OYA's wrongful conduct, A.B. has suffered extreme pain, suffering, and emotional distress. A.B. has an intense dislike of doctors and avoids them as much as possible. A.B. struggles with intimacy, which interferes with his ability to develop normal relationships with people. His psychological injuries persist to the

PAGE 15 – **SECOND AMENDED COMPLAINT**

present and are therefore permanent in nature. Consequently, A.B. has suffered noneconomic damages of $5,000,000, the exact amount to be determined by a jury.

## ABUSE OF J.S.

### 64.

Plaintiffs reallege and incorporate herein paragraphs 1 through 63.

### 65.

Plaintiff J.S. is a 36-year-old male. J.S. was adjudicated and initially placed in MacLaren in or around 2004. J.S. was abused by Dr. Edwards four to five times, starting at age 16.

### 66.

J.S. would visit Dr. Edwards as needed for routine medical purposes. Every time that J.S. did so, regardless of the reason for his visit, Dr. Edwards would force his ungloved hand down J.S.'s pants and stroke J.S.'s penis without warning. Because J.S. had never experienced a physical exam before arriving in MacLaren, Dr. Edwards was able to convince J.S. that this was normal medical procedure.

### 67.

As a direct and proximate result of Dr. Edwards' and Defendant OYA's wrongful conduct, J.S. incurred and/or will incur medical expenses for counseling and psychiatric/psychological treatment of approximately $100,000.

### 68.

Directly because of Dr. Edwards' and Defendant OYA's wrongful conduct, J.S. has suffered extreme pain, suffering, and emotional distress. J.S. also has an intense dislike of doctors and avoids them as much as possible. His psychological injuries persist to the present and are therefore permanent in nature. Consequently, J.S. has suffered noneconomic damages of $5,000,000, the exact amount to be determined by a jury.

**ABUSE OF B.N.**

69.

Plaintiffs reallege and incorporate herein paragraphs 1 through 68.

70.

Plaintiff B.N. is a 39-year-old male. B.N. was adjudicated in 2001 and later placed in

MacLaren in or around 2002. B.N. was abused by Dr. Edwards at least three times, starting at

age 16.

71.

B.N. would visit Dr. Edwards as needed for routine medical purposes. Regardless of the

reason for his visit, Dr. Edwards fondled his genitals and even grabbed his penis during each

visit, even when B.N. told him not to.

72.

B.N. regularly discussed Dr. Edwards' abuse with other juveniles, often in the presence

of MacLaren staff. B.N. also explicitly told one nurse prior to an exam that he did not want the

doctor to grope him. Despite the disclosure of Dr. Edwards' abuse, MacLaren staff never reacted,

never made any inquiries about the abuse, nor made any attempt to prevent it.

73.

As a direct and proximate result of Dr. Edwards' and Defendant OYA's wrongful

conduct, B.N. incurred and/or will incur medical expenses for counseling and

psychiatric/psychological treatment of approximately $100,000.

74.

Directly because of Dr. Edwards' and Defendant OYA's wrongful conduct, B.N. has

suffered extreme pain, suffering, and emotional distress. B.N. has an intense dislike of doctors

and avoids them as much as possible. B.N. struggles with shame, as well as blaming himself for

what happened. His psychological injuries persist to the present and are therefore permanent in

nature. Consequently, B.N. has suffered noneconomic damages of $5,000,000, the exact amount to be determined by a jury.

## ABUSE OF M.L.

75.

Plaintiffs reallege and incorporate herein paragraphs 1 through 74.

76.

Plaintiff M.L. is a 37-year-old male. M.L. was adjudicated and initially placed in MacLaren in or around 2004. M.L. was abused by Dr. Edwards at least twice starting at age 16.

77.

Dr. Edwards abused M.L. two times during medical examinations. Dr. Edwards ordered M.L. to remove his pants and then fondled M.L.'s testicles without gloves during both visits.

78.

As a direct and proximate result of Dr. Edwards' and Defendant OYA's wrongful conduct, M.L. incurred and/or will incur medical expenses for counseling and psychiatric/psychological treatment of approximately $100,000.

79.

Directly because of Dr. Edwards' and Defendant OYA's wrongful conduct, M.L. endured significant pain, suffering, and emotional distress. This includes a persistent distrust of any medical providers. His psychological injuries persist to the present and are therefore permanent in nature. Consequently, M.L. has suffered noneconomic damages of $5,000,000, the exact amount to be determined by a jury.

## ABUSE OF J.L.

80.

Plaintiffs reallege and incorporate herein paragraphs 1 through 79.

81.

Plaintiff J.L. is a 36-year-old male. J.L. was adjudicated and initially placed in MacLaren in or around 2004. J.L. was abused by Dr. Edwards one time, at age 16.

82.

When J.L. was placed in MacLaren, he was sent to see Dr. Edwards for a physical. Dr. Edwards told J.L. to take off his shirt, pants and underwear. Dr. Edwards told J.L. to stay still while he proceeded to grope J.L.'s penis and testicles without wearing gloves. The doctor then proceeded to put his hand in his own pants and rub his own genitals. When J.L. told him to stop, the doctor told J.L. to shut his mouth.

83.

Dr. Edwards threatened to send J.L. to "the hole" for punishment if J.L. said anything about the abuse, and convinced J.L. that no one would believe him because Dr. Edwards was a doctor.

84.

As a direct and proximate result of Dr. Edwards' and Defendant OYA's wrongful conduct, J.L. incurred and/or will incur medical expenses for counseling and psychiatric/psychological treatment of approximately $100,000.

85.

Directly because of Dr. Edwards', and Defendant OYA's wrongful conduct, J.L. endured significant pain, suffering, and emotional distress. This includes a persistent distrust of any medical provider. He has also struggled with shame and addiction to self-medicate. The abuse has caused J.L. to isolate himself and shut people out. His psychological injuries persist to the present and are therefore permanent in nature. Consequently, J.L. has suffered noneconomic damages of $5,000,000, the exact amount to be determined by a jury.

///

///

**ABUSE OF C.F.**

86.

Plaintiffs reallege and incorporate herein paragraphs 1 through 85.

87.

Plaintiff C.F. is a 36-year-old male. C.F. was adjudicated and sent to MacLaren in 2007.
C.F. was abused by Dr. Edwards at least two times, beginning at age 17.

88.

C.F. visited Dr. Edwards two times to treat a cold. Both times, C.F. was forced to visit
Dr. Edwards in handcuffs. Dr. Edwards ordered C.F. to remove all of his clothes. Without
gloves, Dr. Edwards proceeded to grope C.F.'s penis and fully pull back C.F.'s foreskin.

89.

C.F. also suffered from irritable bowel syndrome and other intestinal ailments. Because
of his fear of Dr. Edwards, C.F. refrained from visiting the infirmary and had to endure his
condition without medical treatment. C.F. regularly concealed his medical issues in order to
avoid Dr. Edwards as much as possible.

90.

MacLaren staff routinely joked about Dr. Edwards' abuse with C.F. and other juveniles.
MacLaren staff also threatened to send C.F. and others to Dr. Edwards for misbehavior.

91.

As a direct and proximate result of Dr. Edwards' and Defendant OYA's wrongful
conduct, C.F. incurred and/or will incur medical expenses for counseling and
psychiatric/psychological treatment of approximately $100,000.

92.

Directly because of Dr. Edwards' and Defendant OYA's wrongful conduct, C.F. endured
significant pain, suffering, and emotional distress. C.F. has a lack of respect for law enforcement
due to the combination of being abused by Dr. Edwards and the corrections staff knowing about

it but doing nothing. His psychological injuries persist to the present and are therefore permanent in nature. Consequently, C.F. has suffered noneconomic damages of $5,000,000, the exact amount to be determined by a jury.

**ABUSE OF J.K.**

93.

Plaintiffs reallege and incorporate herein paragraphs 1 through 92.

94.

Plaintiff J.K. is a 35-year-old male. J.K. was adjudicated and sent to NORCOR in or around 2002 at age 13. He was placed in MacLaren in or around 2003. J.K. was abused by Dr. Edwards and STAFFER #1 at least once between the ages of 13 and 14.

95.

At NORCOR, J.K. was raped by STAFFER #1 in his dormitory. In the middle of the night, J.K. awoke to notice STAFFER #1 behind him in his bed. STAFFER #1 proceeded to smother J.K.'s face into the bed until he lost consciousness. When J.K. awoke later, he had significant pain in his anus.

96.

At MacLaren, Dr. Edwards abused J.K. during his intake appointment. Without gloves, Dr. Edwards repeatedly fondled J.K.'s penis and spread J.K.'s buttocks apart.

97.

As a direct and proximate result of Defendant STAFFER #1's, Dr. Edwards', and Defendant OYA's wrongful conduct, J.K. incurred and/or will incur medical expenses for counseling and psychiatric/psychological treatment of approximately $100,000.

97.

Directly because of Defendant STAFFER #1's and Dr. Edwards' wrongful conduct, as well as Defendant OYA's wrongful conduct, J.K. endured significant pain, suffering, and emotional distress. This includes difficulty with intimacy, which interferes with his relationships.

PAGE 21 – **SECOND AMENDED COMPLAINT**

His psychological injuries persist to the present and are therefore permanent in nature. Consequently, J.K. has suffered noneconomic damages of $5,000,000, the exact amount to be determined by a jury.

### FIRST CLAIM FOR RELIEF

Negligence under OTCA

(Against State of Oregon)

98.

Plaintiffs reallege and incorporate herein paragraphs 1 through 97.

99.

By taking custody of Plaintiffs and acting *in loco parentis* towards them during the period of their confinement, the State entered into a special relationship with Plaintiffs. At all material times, Defendants were in a special relationship with Plaintiffs by virtue of their statutory obligations to children in their care generally and to Plaintiffs specifically. As their legal and physical guardian and custodian, Defendants owed Plaintiffs a heightened duty of care to provide a safe environment and protect them from abuse and injury while in OYA's care.

100.

Defendants' conduct and care were unreasonably below the applicable standard of care and negligently and unreasonably created a foreseeable risk of harm to Plaintiffs in one or more of the following particulars:

a) In allowing for extended and unmonitored individual interactions between OYA staff – including Dr. Edwards and the Defendant Staffers – and youth;

b) In failing to notice, investigate, or intervene to protect Plaintiffs from Dr. Edwards' and the Defendant Staffers' inappropriate and sexual conduct towards Plaintiffs;

c) In failing to properly supervise Dr. Edwards and the Defendant Staffers;

PAGE 22 – **SECOND AMENDED COMPLAINT**

d) In failing to properly heed, investigate, or otherwise take any action in response to reports of inappropriate conduct and sexual abuse by Dr. Edwards and the Defendant Staffers;

e) In failing to report or refer reports of inappropriate conduct and sexual abuse by Dr. Edwards and the Defendant Staffers to external investigative agencies; and

f) In failing to properly vet, hire, train, and retain qualified personnel, including medical providers, corrections officers, and other facility staff.

101.

Defendant OYA's negligence caused Plaintiffs' injuries and damages set out herein. As a result of OYA's negligence as alleged above, Plaintiffs suffered the harm and damages alleged herein.

## SECOND CLAIM FOR RELIEF

## 42 USC § 1983 – Civil Rights Violation

(Substantive Due Process – Violation of 14th Amendment)

(Against All Individual Defendants)

102.

Plaintiffs reallege and incorporate herein paragraphs 1 through 101.

103.

Dr. Edwards and Defendant Staffer #1 were working within the course and scope of their employment at the OYA when they engaged in the wrongful conduct alleged above.

104.

Dr. Edwards and Defendant Staffer #1 were working as staff members or employees of a youth correctional facility.

105.

Dr. Edwards and Defendant Staffer #1 were acting under color of state law.

///

106.

Plaintiffs were confined to MacLaren,  and/or NORCOR as adjudicated youths at the time they were abused by Dr. Edwards and Defendant Staffer #1 as alleged above.

107.

Dr. Edwards and Defendant Staffer #1 touched Plaintiffs in a sexual manner without legitimate penological or medical justification or purpose. Dr. Edwards and Defendant Staffer #1 touched Plaintiffs in a sexual manner that was not reasonably related to any legitimate government objective.

108.

Dr. Edwards and Defendant Staffer #1 acted for their own sexual gratification.

109.

Dr. Edwards' and Defendant Staffer #1's sexual abuse of Plaintiffs constituted a substantial departure from professional judgment, practice, or standards.

110.

Dr. Edwards and Defendant Staffer #1 failed to provide for Plaintiffs' reasonable safety while confined in OYA facilities by repeatedly engaging in coerced sexual conduct with Plaintiffs.

111.

Through the failures outlined above, the Directors and Superintendents created the conditions at MacLaren and NORCOR under which Dr. Edwards' and the Defendant Staffer #1's sexual contact with Plaintiffs was possible.

112.

Those conditions put Plaintiffs at substantial risk of suffering serious harm, namely, the risk that Plaintiffs would be sexually abused by OYA staff or employees.

///

///

PAGE 24 – **SECOND AMENDED COMPLAINT**

113.

The Directors and Superintendents failed to take reasonable available measures to abate the risk that Plaintiffs would be sexually abused by a staff member while confined at MacLaren and NORCOR.

114.

The Directors and Superintendents, in failing to act to protect Plaintiffs from sexual abuse by Dr. Edwards and the Defendant Staffers, failed to provide for Plaintiffs' reasonable safety.

115.

The Directors' and Superintendents' failure to take reasonable available measures, as alleged above, constituted a substantial departure from professional judgment, practice, or standards.

116.

In so doing, given the history at OYA, the Directors and Superintendents evinced deliberate indifference to Plaintiffs' right to be free from coerced sexual contact with Dr. Edwards and Defendant Staffers.

117.

No Defendants took reasonable, appropriate, and legally mandated steps to stop sexual abuse from occurring.

118.

Pursuant to 42 U.S.C. § 1988, Plaintiffs are entitled to recover reasonable and necessary attorney fees and costs incurred in the prosecution of this action.

### THIRD CLAIM FOR RELIEF

### 42 U.S.C. § 1983 – Civil Rights Violation

(Against All Individual Defendants)

119.

Plaintiffs reallege and incorporate herein paragraphs 1 through 118.

PAGE 25 – **SECOND AMENDED COMPLAINT**

120.

Dr. Edwards and Defendant Staffer #1 were working within the course and scope of their employment at the OYA when they engaged in the wrongful conduct alleged above.

121.

Dr. Edwards and Defendant Staffer #1 were working as staff members of a youth correctional facility.

122.

Dr. Edwards and Defendant Staffer #1 were acting under color of state law.

123.

Dr. Edwards and Defendant Staffer #1 touched Plaintiffs in a sexual manner without penological or medical justification or purpose.

124.

Dr. Edwards and Defendant Staffer #1 acted for their own sexual gratification.

125.

Through the failures outlined above, the Directors and Superintendents created the conditions at MacLaren and NORCOR under which Dr. Edwards' and the Defendant Staffer' sexual contact with Plaintiffs were possible.

126.

Pursuant to 42 U.S.C. § 1988, Plaintiffs are entitled to recover reasonable and necessary attorney fees and costs incurred in the prosecution of this action.

**FOURTH CLAIM FOR RELIEF**

**Sexual Battery of Child – *Respondeat Superior***

**(Against Defendant OYA)**

127.

Plaintiffs reallege and incorporate herein paragraphs 1 through 126.

///

PAGE 26 – **SECOND AMENDED COMPLAINT**

128.

While acting in the course and scope of their agency for Defendant OYA, Dr. Edwards and Defendant Staffer #1 engaged in harmful and offensive touching of Plaintiffs to which Plaintiffs did not or could not consent, including groping Plaintiffs' genitals, masturbating of certain Plaintiffs, and digitally penetrating certain Plaintiffs, as set out more specifically above.

129.

Acts within the course and scope of Dr. Edward's and Defendant Staffer #1's agency with Defendant OYA led to or resulted in the sexual batteries of Plaintiffs.

130.

As a direct result of Dr. Edward's and Defendant Staffer #1's sexual batteries, Plaintiffs have incurred economic and noneconomic damages as set out more fully above. Defendant OYA is vicariously liable for the sexual batteries of Dr. Edwards and Defendant Staffer #1. Therefore, Plaintiffs are entitled to compensatory damages from Defendant OYA in an amount to be determined by a jury.

## NOTICE OF POTENTIAL CONSTITUTIONAL QUESTION

131.

As to any claim for relief, to the extent that any of the Defendants seek to reduce any compensatory damage verdict in favor of Plaintiffs on the basis of statutory damages limits from former ORS 30.270 (repealed in 2009), Plaintiffs aver that such damages limits are constitutionally inadequate as applied to this case.

## PRAYER FOR RELIEF

WHEREFORE, each Plaintiff prays for judgment against Defendants as follows:

1.  On the First Claim for Relief for Negligence:

    a) Economic damages in the amount of $100,000 per Plaintiff;

    b) Noneconomic damages in the amount of $5,000,000 per Plaintiff; and

    c) Costs and disbursements incurred herein.

PAGE 27 – **SECOND AMENDED COMPLAINT**

2.    On the Second Claim of for Relief for Civil Rights Violations – 14th Amendment Due Process:

    a)  Economic damages in the amount of $100,000 per Plaintiff;

    b)  Noneconomic damages in the amount of $5,000,000 per Plaintiff;

    c)  Attorney fees incurred herein pursuant to 42 U.S.C. § 1988;

    d)  Costs and disbursements incurred herein; and

    e)  Any other relief that the Court deems necessary.

3.    On the Third Claim for Relief for Civil Rights Violations – 8th Amendment Cruel and Unusual Punishment:

    a)  Economic damages in the amount of $100,000 per Plaintiff;

    b)  Noneconomic damages in the amount of $5,000,000 per Plaintiff; and

    c)  Costs and disbursements incurred herein.

4.    On the Fourth Claim for Sexual Battery of a Child—*Respondeat Superior*:

    a)  Economic damages in the amount of $100,000 per Plaintiff;

    b)  Noneconomic damages in the amount of $5,000,000 per Plaintiff; and

    c)  Costs and disbursements incurred herein.

DATED: June 13, 2025.

/s/ Peter Janci
Peter Janci, OSB #074249
CREW JANCI LLP
9755 SW Barnes Rd., Ste. 430
Portland, OR 97225
Phone: (503) 306-0224

/s Paul Galm
Paul C. Galm, OSB #002600
GALM LAW
12220 SW First St.
Beaverton, OR 97005
Phone: (503) 641-6000

/s/ Kendall M. H. Spinella
Kendall M.H. Spinella, OSB #214446
CREW JANCI LLP
9755 SW Barnes Rd., Ste. 430
Portland, OR 97225
Phone: (503) 306-0224


*Attorneys for Plaintiff*